# EXHIBIT A

## Complaint

Eighth Judicial District Court Case No.
A-26-950144-C

Electronically Filed
6/30/2026 12:00 AM
Steven D. Grierson
CLERK OF THE COURT

**COMP**

Max Kelner, Esq.
Nevada Bar #16557
9173 Weeping Hollow Ave.
Las Vegas, NV 89178
(714)-357-1831
max@maxkelnerlaw.com
*Attorney for Plaintiff*

CASE NO: A-26-950144-C
Department 31

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| LED CONSULTING LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>-vs-<br><br>CANDELA CORPORATION, a Delaware corporation; CANDELA MEDICAL, INC., a Delaware corporation; DOES I through X; and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants. | Case No.<br><br>Dept No.<br><br>**COMPLAINT**<br><br>**EXEMPT FROM MANDATORY ARBITRATION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff LED Consulting LLC d/b/a Spoiled Laser Hair Removal Spa ("Plaintiff," "LED," or "Spoiled Laser"), by and through undersigned counsel, alleges against Defendants Candela Corporation, Candela Medical, Inc., DOES I through X, and ROE CORPORATIONS I through X, inclusive, as follows:

## I. INTRODUCTION

1. This action arises from Defendants' sale, servicing, repair, replacement, warranty, concealment, and misrepresentation of multiple Candela GMAX-PRO laser systems and related replacement components used by Plaintiff in its Nevada laser hair-removal and medical-aesthetic business.

2. Plaintiff purchased three Candela GMAX-PRO laser systems for use as core revenue-producing assets in Spoiled Laser's business.
3. The machines were not incidental equipment. Spoiled Laser's ability to schedule, sell, and perform laser services depended on having functioning laser systems available for customer appointments.
4. Candela knew, or reasonably should have known, that prolonged outages of the machines would foreseeably cause cancelled appointments, rescheduled appointments, refunds, idle payroll, loss of clients, reputational injury, loss of goodwill, lost revenue, and diminished business value.
5. Beginning in or about December 2023, and continuing through 2024 and 2025, the machines experienced recurring breakdowns.
6. By early 2025, the failures had become operationally catastrophic. Candela technicians were dispatched repeatedly, often nearly bi-weekly, to replace failed components and attempt to restore the machines to service.
7. Each breakdown took one or more machines offline for approximately 10 to 14 days while Plaintiff awaited technician scheduling, diagnosis, replacement parts, repair attempts, or further instructions from Candela.
8. On or about March 28, 2025, all three machines were down simultaneously, leaving Spoiled Laser without the functioning laser equipment required to serve its clients.
9. During the repair process, Candela technicians acknowledged to Spoiled Laser management that newly manufactured replacement YAG Heads were defective, were failing prematurely on a widespread or worldwide basis, and that Candela was redesigning the component before further non-defective replacements could be supplied.
10. Candela did not timely disclose the known defect, did not timely provide non-defective replacement parts, did not timely restore the machines to reliable working order, did not provide meaningful warranty or repair relief, and did not compensate Plaintiff for the resulting business losses.
11. The resulting losses were not speculative. Spoiled Laser's contemporaneous business dashboards show stable same-week performance in 2021, 2022, and 2023, followed by a sharp same-week decline in 2024 after the machine problems had begun.

12. For the July 25 through July 31 comparison week, Spoiled Laser recorded total sales of $77,436.32 in 2021, $79,585.68 in 2022, and $71,775.56 in 2023.
13. The average of those three comparable weeks was approximately $76,265.85.
14. For the same July 25 through July 31 comparison week in 2024, after the recurring machine failures had begun, Spoiled Laser recorded total sales of only $45,751.53.
15. That reflects a same-week decline of approximately $30,514.32 against the 2021–2023 comparable-week average.
16. Plaintiff was under contract or active transaction process for the sale of the business using a valuation formula tied to gross sales.
17. Because the business sale value was calculated at approximately four times gross sales, the approximately $30,000 reduction in gross sales translated into approximately $120,000 in diminished business value.
18. Plaintiff brings this action to recover all damages caused by Defendants' defective machines, defective replacement components, defective YAG Heads, failed repairs, failure to warn, fraudulent concealment, misrepresentations, deceptive trade practices, warranty breaches, contractual repair failures, and failure to provide timely and commercially reasonable cure.

## II. <u>PARTIES</u>

19. Plaintiff LED Consulting LLC is a Nevada limited-liability company.
20. LED does business as Spoiled Laser Hair Removal Spa.
21. At all relevant times, Spoiled Laser operated a laser hair-removal and medical-aesthetic spa business in Las Vegas, Clark County, Nevada.
22. At all relevant times, Spoiled Laser used Candela GMAX-PRO laser systems as core business assets in Clark County, Nevada.
23. Defendant Candela Corporation is, and at all relevant times was, a foreign corporation doing business in Nevada.
24. Plaintiff is informed and believes, and based thereon alleges, that Candela Corporation designs, manufactures, markets, sells, distributes, warranties, repairs, services, and supplies replacement parts

for medical-aesthetic laser systems, including the GMAX-PRO laser systems and YAG Head components at issue in this case.

25. Defendant Candela Medical, Inc. is, and at all relevant times was, a Delaware corporation doing business directly or indirectly in Nevada.

26. Plaintiff is informed and believes, and based thereon alleges, that Candela Medical, Inc. is a parent, affiliate, successor, alter ego, principal, agent, trade-name user, product-line operator, or responsible corporate entity connected to Candela Corporation and the Candela business that marketed, serviced, supplied, controlled, or benefited from the transactions and conduct alleged herein.

27. Plaintiff is informed and believes, and based thereon alleges, that Defendants Candela Corporation and Candela Medical, Inc. jointly operated, controlled, marketed, represented, serviced, or derived revenue from the Candela products, replacement parts, service programs, technician network, customer relationships, warranties, and repair undertakings at issue.

28. Plaintiff refers to Candela Corporation and Candela Medical, Inc. collectively as “Candela” or “Defendants” unless otherwise stated.

29. Plaintiff is presently unaware of the true names and capacities of Defendants DOES I through X and ROE CORPORATIONS I through X, inclusive, and therefore sues those Defendants by fictitious names.

30. Plaintiff will amend this Complaint to identify the true names and capacities of fictitiously named Defendants when ascertained.

31. Plaintiff is informed and believes, and based thereon alleges, that each fictitiously named Defendant was responsible in some manner for the acts, omissions, products, components, services, repairs, warranties, concealments, representations, failures, and damages alleged herein.

32. Plaintiff is informed and believes, and based thereon alleges, that at all relevant times each Defendant was the agent, servant, employee, representative, affiliate, successor, predecessor, alter ego, distributor, service provider, repair provider, contractor, subcontractor, joint venturer, or co-conspirator of each other Defendant, and acted within the course and scope of such relationship in doing the acts and omissions alleged herein.

## III. JURISDICTION, VENUE, AND ARBITRATION EXEMPTION

33. This Court has subject-matter jurisdiction because this civil action seeks damages in excess of $15,000, exclusive of interest, attorney's fees, and costs.

34. This action is exempt from Nevada's mandatory nonbinding arbitration program because the amount in controversy exceeds $100,000 per plaintiff, exclusive of attorney's fees, interest, and costs.

35. This action is also exempt from mandatory arbitration because Plaintiff seeks declaratory and equitable relief in addition to damages.

36. This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of Nevada by selling, distributing, warranting, repairing, servicing, supplying replacement parts for, and deriving revenue from Candela laser systems used in Nevada.

37. Defendants specifically directed conduct toward Nevada by entering into customer relationships with a Nevada business, dispatching technicians to Clark County, Nevada, repairing and servicing equipment in Clark County, Nevada, communicating with Plaintiff regarding Nevada equipment, and supplying or attempting to supply replacement parts for equipment located in Nevada.

38. Defendants caused injury to Plaintiff in Nevada.

39. Defendants knew, or reasonably should have known, that their defective products, defective replacement components, failed repairs, failure to warn, concealment, and misrepresentations would cause harm in Nevada.

40. Venue is proper in Clark County because Plaintiff is located in Clark County, the machines were used in Clark County, Defendants serviced and repaired the machines in Clark County, Defendants dispatched technicians to Clark County, material communications and omissions affected Plaintiff in Clark County, and the damages occurred in Clark County.

41. Venue is also proper in Clark County because the acts and omissions giving rise to this action occurred, at least in substantial part, in Clark County.

42. To the extent Defendants contend that any service agreement contains a Massachusetts forum-selection or choice-of-law clause, Plaintiff alleges that such provisions do not defeat Nevada jurisdiction or Clark County venue over Plaintiff's statutory, tort, fraud, concealment, negligent repair, failure-to-warn, deceptive-trade-practices, and post-expiration repair claims.

43. Plaintiff's Nevada consumer-fraud and deceptive-trade-practices claims are not actions upon any contract underlying the original transaction.
44. Plaintiff's claims arise from Nevada conduct, Nevada service visits, Nevada repair efforts, Nevada omissions, defective replacement components supplied or installed for Nevada equipment, concealment affecting a Nevada business, and damages suffered in Nevada.
45. To the extent any contractual forum clause is later found relevant to any narrow contract claim, Plaintiff pleads all non-contract claims independently and in the alternative, and no such contractual clause applies to nonparties, statutory claims, fraud claims, deceptive-trade-practices claims, post-expiration repair undertakings, or separate service and repair conduct not governed by such clause.

## IV. FACTUAL ALLEGATIONS

### A. Spoiled Laser's business depended on functioning Candela equipment.

46. Spoiled Laser is a laser hair-removal and medical-aesthetic business.
47. Spoiled Laser's revenue, customer retention, scheduling, reputation, goodwill, and business valuation depended on its ability to reliably provide laser services.
48. Spoiled Laser could not perform material revenue-generating laser services without functioning laser machines.
49. Candela knew that medical-aesthetic businesses purchase Candela machines as core revenue-producing equipment.
50. Candela knew that customers such as Spoiled Laser depend on Candela's machines, parts, service network, field technicians, technical expertise, and repair representations.
51. Candela knew, or reasonably should have known, that prolonged downtime of even one machine would disrupt customer appointments and revenue.
52. Candela knew, or reasonably should have known, that simultaneous downtime of multiple machines would materially disrupt Spoiled Laser's entire business.
53. Candela knew, or reasonably should have known, that repeated failures of core laser equipment would foreseeably cause cancelled appointments, rescheduled appointments, refunds, idle payroll, loss of customers, negative reviews, loss of goodwill, business interruption, and diminished business value.

**B. <u>Plaintiff purchased three Candela GMAX-PRO machines.</u>**

54. Plaintiff purchased three Candela GMAX-PRO laser systems in or about 2015, 2019, and 2021.
55. Plaintiff paid approximately $85,000, $68,000, and $80,000 for the three machines, respectively.
56. Plaintiff purchased the machines for use in Spoiled Laser's Nevada business.
57. Candela represented, expressly and impliedly, that the machines were suitable for their intended professional medical-aesthetic use.
58. Candela represented, expressly and impliedly, that the machines and components were of merchantable quality.
59. Candela represented, expressly and impliedly, that the machines could be maintained, serviced, repaired, and restored through Candela's service network and replacement-part system.
60. Candela represented, expressly and impliedly, that Candela replacement components would be suitable, non-defective, and appropriate for restoring machine functionality.
61. Plaintiff reasonably relied on Candela's representations, warranties, repair network, replacement-part supply, technician expertise, and service infrastructure.

**C. <u>Candela issued written service agreements for at least two machines.</u>**

62. Plaintiff is informed and believes, and based thereon alleges, that Candela issued written service agreements for at least two of Plaintiff's GMAX-PRO systems.
63. One written service agreement identified Spoiled Laser Hair Removal as the customer, account number 3988, and covered GMAX-PRO system serial number 9914-9035-10937.
64. Another written service agreement identified Spoiled Laser Hair Removal as the customer, account number 3988, and covered GMAX-PRO system serial number 9914-9035-13505.
65. The documented service period for those agreements was July 20, 2022 through July 19, 2024.
66. The service agreements stated that Candela would provide service for defects in materials and workmanship for the covered equipment during the service period.
67. The service agreements stated that Candela would, within the applicable service period and at Candela's option, repair or replace defects in the equipment or in Candela's workmanship without cost to the customer for parts or labor, except as otherwise stated.

68. The service agreements stated that Candela would provide necessary labor, travel expenses, and parts, unless otherwise noted.
69. The service agreements stated that Candela would use best efforts to respond to the customer within 24 hours of notification of needed service and repairs.
70. The service agreements stated that Candela would use best efforts to be onsite within 48 hours of response to the customer, excluding weekends and holidays, unless the customer requested a later date.
71. The service agreements further required Plaintiff to use Candela-authorized service and Candela-manufactured or distributed accessories and consumables.
72. Accordingly, Candela controlled the approved repair pathway for the covered machines, controlled the approved replacement-part supply, and placed Plaintiff in the position of relying on Candela for proper diagnosis, parts, repairs, and disclosures.
73. Plaintiff is informed and believes, and based thereon alleges, that additional repair orders, work orders, service records, parts records, replacement-part records, warranty records, technician notes, call records, field-service reports, and internal Candela communications exist and are in Candela's possession, custody, or control.
74. Plaintiff is informed and believes, and based thereon alleges, that Candela continued to undertake service, repair, replacement-part, diagnostic, warranty, or customer-support activities after July 19, 2024, including in 2025, separate and apart from the documented 2022–2024 written service agreements.
75. Plaintiff will seek all such records in discovery.

**D. <u>The machines began suffering repeated breakdowns.</u>**

76. Beginning in or about December 2023, the machines began to regularly break down.
77. The breakdowns continued through 2024.
78. By early 2025, the machines were experiencing persistent and recurring failures.
79. In January, February, and March 2025, Candela technicians were dispatched repeatedly to diagnose, repair, service, and replace failed components.

80. The service visits occurred at or concerned Plaintiff's Nevada business and machines located in Nevada.
81. Candela technicians attempted repairs and replaced components, including YAG Head components.
82. The attempted repairs did not provide durable, commercially reasonable cure.
83. Instead, the machines continued to fail.
84. Each breakdown rendered one or more machines inoperable for approximately 10 to 14 days while Plaintiff awaited diagnosis, service appointments, technician availability, parts, repair work, and additional Candela instructions.
85. Plaintiff could not reasonably self-repair the machines.
86. Plaintiff could not reasonably obtain unauthorized third-party repairs without risking Candela's warranty, service-position, parts-position, or later blame-shifting defenses.
87. Candela required or expected Plaintiff to rely on Candela's own approved service personnel and replacement parts.
88. Plaintiff did rely on Candela's approved service personnel and replacement parts.
89. Candela's repeated service attempts failed to restore the machines to reliable, commercially usable condition.

**E. <u>Candela knew of a defective YAG Head problem and failed to timely disclose it.</u>**

90. Plaintiff is informed and believes, and based thereon alleges, that YAG Heads are material components of the Candela laser systems at issue.
91. Plaintiff is informed and believes, and based thereon alleges, that Candela supplied, installed, attempted to install, or recommended newly manufactured replacement YAG Heads for Plaintiff's machines.
92. During repair and service interactions in early 2025, Candela technicians acknowledged to Spoiled Laser management that newly manufactured replacement YAG Heads were defective.
93. Candela technicians acknowledged that the replacement YAG Heads were failing prematurely.
94. Candela technicians acknowledged that the defect was not isolated to Spoiled Laser.
95. Candela technicians acknowledged that the premature YAG Head failures were occurring on a widespread or worldwide basis.

96. Candela technicians acknowledged that Candela was redesigning the component before further replacements could be shipped.

97. These admissions were made by Candela's agents, representatives, employees, or authorized service personnel during the course and scope of Candela service and repair work.

98. These admissions confirmed that Plaintiff's repeated machine failures were not caused by isolated customer misuse.

99. These admissions confirmed that Candela had superior knowledge concerning a broader defective-component problem.

100. These admissions confirmed that Plaintiff had been relying on Candela repairs and replacement parts without being timely informed of material information necessary to protect its business.

101. Plaintiff is informed and believes, and based thereon alleges, that Candela knew or should have known of the defective YAG Head problem before fully disclosing it to Plaintiff.

102. Plaintiff is informed and believes, and based thereon alleges, that Candela possessed superior and exclusive knowledge concerning the nature, cause, frequency, scope, expected duration, and operational risk of the defective YAG Head problem.

103. Plaintiff could not reasonably discover the true nature, scope, frequency, cause, or expected duration of the YAG Head defect without Candela's disclosure.

104. Candela failed to timely disclose material information to Plaintiff, including but not limited to:

a. That newly manufactured replacement YAG Heads were defective;

b. That replacement YAG Heads were failing prematurely;

c. That the failure problem was widespread or worldwide;

d. That Candela was redesigning the component;

e. That non-defective replacement components may not be available within a commercially reasonable time;

f. That continued reliance on the machines and Candela repairs created a foreseeable risk of prolonged downtime;

g. That multiple machines could fail simultaneously;

h. That Plaintiff should consider mitigation measures beyond waiting for Candela's repair process; and

i. That Plaintiff's business revenue and valuation were at risk.

105. Candela's omissions were material because a reasonable business owner would consider them important in deciding how to schedule clients, communicate with clients, evaluate repair options, pursue substitute equipment, negotiate a business sale, disclose operational risk to a buyer, or mitigate damages.

**F. <u>All three machines were down simultaneously.</u>**

106. On or about March 28, 2025, all three Candela machines were down simultaneously.

107. The simultaneous outage left Spoiled Laser without functioning laser equipment for an extended period.

108. The simultaneous outage materially impaired Spoiled Laser's ability to serve clients.

109. The simultaneous outage caused cancelled and rescheduled appointments.

110. The simultaneous outage caused customer dissatisfaction.

111. The simultaneous outage caused lost sales.

112. The simultaneous outage caused loss of customer goodwill.

113. The simultaneous outage caused administrative burden and management distraction.

114. The simultaneous outage caused idle payroll and wasted operating expenses.

115. The simultaneous outage caused or contributed to diminished business value.

116. The simultaneous outage was a direct and foreseeable consequence of Candela's defective components, failed repairs, delayed replacement parts, concealment, failure to warn, and failure to timely provide non-defective cure.

**G. <u>The dashboards corroborate the damages.</u>**

117. Spoiled Laser's business dashboards corroborate Plaintiff's damages.

118. For the July 25 through July 31 comparison week in 2021, Spoiled Laser recorded total sales of $77,436.32.

119. For the July 25 through July 31 comparison week in 2022, Spoiled Laser recorded total sales of $79,585.68.

120. For the July 25 through July 31 comparison week in 2023, Spoiled Laser recorded total sales of $71,775.56.

121. The average of the 2021, 2022, and 2023 comparable weeks was approximately $76,265.85.

122. For the July 25 through July 31 comparison week in 2024, after the repeated machine problems had begun, Spoiled Laser recorded total sales of only $45,751.53.

123. The 2024 comparable week therefore reflected an approximate $30,514.32 decline from the 2021–2023 comparable-week average.

124. The 2024 comparable week also reflected a material decline in average ticket, with an average ticket of $111.45 compared to $144.25 in 2021, $162.02 in 2022, and $145.13 in 2023.

125. The 2024 comparable week reflected only 382 orders, compared to 433 in 2021, 451 in 2022, and 423 in 2023.

126. The 2024 comparable week reflected refunds of $8,100.00.

127. These figures are consistent with Plaintiff's damages from lost revenue, refunds, customer disruption, client attrition, diminished goodwill, and diminished business value.

128. Plaintiff is informed and believes, and based thereon alleges, that additional business records, appointment records, refund records, cancellation records, customer communications, employee records, sale transaction records, and buyer communications will further corroborate Plaintiff's damages.

**H. <u>The machine failures diminished the business sale value.</u>**

129. Plaintiff was under contract or active transaction process for sale of Spoiled Laser.

130. The business valuation was based on historical and average gross sales.

131. Plaintiff is informed and believes, and based thereon alleges, that the applicable valuation methodology used approximately four times average gross sales.

132. Candela knew, or reasonably should have known, that lost gross sales would foreseeably affect the value of a revenue-dependent medical-aesthetic business.

133. Candela knew, or reasonably should have known, that defective core equipment would foreseeably reduce business performance and value.

134. The approximately $30,000 decline in gross sales attributable to the machine failures resulted in an approximately $120,000 reduction in business sale value.

135. The diminished sale value was a direct, natural, probable, and foreseeable consequence of Candela's defective machines, defective replacement components, failed repairs, concealment, misrepresentations, and failure to warn.

**I. <u>Plaintiff provided notice and demanded cure.</u>**

136. Plaintiff repeatedly notified Candela of machine failures through repair requests, service requests, technician communications, scheduling communications, and service visits.

137. Candela had actual notice of the machine failures because Candela's own technicians repeatedly inspected, diagnosed, serviced, repaired, and replaced components in the machines.

138. Candela had actual notice of the YAG Head defect because Candela's own technicians acknowledged the defective replacement YAG Head issue to Plaintiff.

139. Candela had actual or constructive notice of the broader defect because its technicians acknowledged premature failures on a widespread or worldwide basis.

140. On or about November 7, 2025, Plaintiff, through counsel, sent Candela a formal demand for damages and warranty relief.

141. The demand identified the machine purchases, repeated breakdowns, repeated technician visits, extended downtime, March 28, 2025 all-machine outage, technician admissions concerning defective YAG Heads, lost revenue, diminished business value, refunds, payroll waste, reputational harm, loss of goodwill, administrative burden, and other damages.

142. The demand also instructed Candela to preserve records, communications, engineering files, testing data, service reports, component records, internal investigations, and customer complaints relating to the machines and defective YAG Head components.

143. Candela failed or refused to provide adequate compensation, adequate cure, adequate warranty relief, or adequate explanation.

//

//

**J. <u>Candela's limitations and disclaimers do not bar Plaintiff's claims.</u>**

144. Plaintiff is informed and believes, and based thereon alleges, that Candela will attempt to rely on contractual disclaimers, remedy limitations, consequential-damages exclusions, forum-selection provisions, choice-of-law provisions, expiration provisions, or service exclusions.

145. Those provisions do not bar Plaintiff's claims.

146. Plaintiff's statutory consumer-fraud and deceptive-trade-practices claims are not actions upon any contract underlying the original transaction.

147. Plaintiff's fraud, concealment, negligent repair, failure-to-warn, and misrepresentation claims arise from independent duties and wrongful conduct separate from mere nonperformance of a contract.

148. Plaintiff's claims also arise from post-expiration service, repair, diagnostic, replacement-part, and customer-support undertakings in 2025.

149. Plaintiff's claims also arise from defective replacement components and YAG Heads supplied, installed, recommended, or withheld by Candela.

150. Plaintiff's claims also arise from Candela's superior knowledge and failure to timely disclose known defects.

151. To the extent any limited repair-or-replacement remedy applies, it failed of its essential purpose because Candela repeatedly failed to restore the machines to reliable, commercially usable condition within a reasonable time.

152. To the extent any consequential-damages exclusion applies, it is unenforceable, inapplicable, waived, unconscionable as applied, defeated by failure of essential purpose, unavailable due to fraud or concealment, or otherwise ineffective under applicable law.

153. To the extent any implied-warranty disclaimer applies to a particular original machine purchase, such disclaimer does not bar claims based on express warranties, defective replacement parts, separate repair transactions, post-sale service undertakings, fraudulent concealment, negligent repair, deceptive trade practices, or post-expiration conduct.

154. To the extent any forum-selection provision applies to a particular service agreement, it does not apply to all claims, all machines, all Defendants, all post-expiration conduct, all statutory claims, all

tort claims, all fraud claims, all deceptive-trade-practices claims, or all defective replacement-part claims alleged herein.

155. To the extent any choice-of-law provision applies to a particular service agreement, it does not displace Nevada statutory claims arising from deceptive trade practices directed at and injuring a Nevada business in Nevada.

## V. FIRST CAUSE OF ACTION

**NEVADA DECEPTIVE TRADE PRACTICES / CONSUMER FRAUD**
**NRS 41.600 AND NRS 598.0915–598.0925**
**Against All Defendants**

156. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

157. Plaintiff is a "person" within the meaning of NRS Chapter 598 and NRS 41.600.

158. Plaintiff is a victim of consumer fraud under NRS 41.600.

159. Candela engaged in deceptive trade practices in the course of its business or occupation.

160. Candela engaged in trade or commerce in Nevada by marketing, selling, distributing, warranting, repairing, servicing, and supplying replacement parts for medical-aesthetic laser systems to Nevada customers, including Plaintiff.

161. Candela knowingly made false representations concerning the characteristics, uses, benefits, alterations, quantities, quality, reliability, repairability, serviceability, and performance of the machines, components, replacement components, YAG Heads, repairs, and services.

162. Candela represented that its goods and services were of a particular standard, quality, grade, style, or model when Candela knew or should have known they were of another standard, quality, grade, style, or model.

163. Candela knowingly made false representations in transactions with Plaintiff, including representations that the machines, replacement components, repairs, and Candela service process were suitable, reliable, non-defective, commercially reasonable, and adequate to restore the machines to working condition.

164. Candela failed to make delivery of goods or services within a reasonable time by failing to timely provide non-defective replacement components, failing to timely provide effective repairs, and failing to timely restore the machines to reliable working condition.

165. Candela failed to timely disclose known material defects affecting its goods, replacement parts, services, and repairs.

166. Candela knowingly concealed or omitted material information concerning the defective YAG Heads, premature failures, widespread or worldwide nature of the problem, redesign process, lack of timely non-defective replacements, and foreseeable downtime.

167. Candela's deceptive acts and omissions were material.

168. Plaintiff reasonably relied on Candela's representations, omissions, repair undertakings, service communications, and replacement-part process.

169. Plaintiff was damaged as a result of Candela's deceptive trade practices and consumer fraud.

170. Plaintiff's damages include lost revenue, diminished business value, refunds, credits, payroll waste, repair and service expenses, substitute-equipment expenses, business interruption, loss of clients, loss of goodwill, reputational injury, administrative burden, attorney's fees, costs, interest, and other damages according to proof.

171. Plaintiff is entitled to damages, equitable relief, costs, and reasonable attorney's fees under NRS 41.600.

## VI. <u>SECOND CAUSE OF ACTION</u>
## FRAUDULENT CONCEALMENT / INTENTIONAL MISREPRESENTATION
### Against All Defendants

172. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

173. Candela intentionally concealed material facts from Plaintiff.

174. Candela knew, or was recklessly indifferent to the truth, that the machines, replacement components, and/or YAG Heads were defective, unreliable, failing prematurely, or unable to timely restore the machines to reliable commercial operation.

175. Candela knew, or was recklessly indifferent to the truth, that replacement YAG Heads were failing prematurely on a widespread or worldwide basis.

176. Candela knew, or was recklessly indifferent to the truth, that it was redesigning the YAG Head component before further non-defective replacements could be supplied.

177. Candela knew, or was recklessly indifferent to the truth, that Plaintiff could not independently discover the true nature, scope, frequency, cause, and expected duration of the defect.

178. Candela had a duty to disclose material facts because Candela had superior knowledge, made partial disclosures, undertook service and repair work, supplied replacement parts, controlled the approved service pathway, and knew Plaintiff was relying on Candela to keep the machines operational.

179. Candela concealed, suppressed, or failed to timely disclose material facts, including that replacement YAG Heads were defective, that the defect was widespread or worldwide, that replacement parts were failing prematurely, that a redesign was required, that non-defective replacement components were not available within a commercially reasonable time, and that Plaintiff's machines were at risk of extended or simultaneous downtime.

180. Candela also made affirmative representations, directly or through its agents, technicians, repair communications, service documents, warranty communications, and course of conduct, that the machines and replacement components could be repaired and restored through Candela's service process.

181. Those representations were false, incomplete, or misleading.

182. The identity of the specific technician(s), engineer(s), manager(s), and internal personnel involved in the concealment is presently within Candela's possession, custody, or control and will be ascertained through discovery.

183. The concealment and misrepresentations occurred in connection with service calls, repair visits, replacement-part communications, customer-service communications, and technician interactions in or concerning Las Vegas, Nevada, including in 2024 and 2025.

184. Candela intended Plaintiff to rely on its concealment, partial disclosures, repair representations, and service process.

185. Plaintiff did rely on Candela's concealment, partial disclosures, repair representations, and service process.

186. Plaintiff's reliance was justified because Candela had superior technical knowledge, product knowledge, engineering knowledge, defect knowledge, warranty knowledge, repair knowledge, and access to replacement parts.

187. Had Plaintiff known the truth earlier, Plaintiff would have taken additional mitigation steps, adjusted scheduling, informed customers, sought substitute equipment, altered sale negotiations, pursued alternate remedies, and otherwise protected its business.

188. As a direct and proximate result of Candela's fraudulent concealment and intentional misrepresentations, Plaintiff suffered damages in an amount exceeding $100,000.

189. Plaintiff's damages include lost revenue, diminished business value, refunds, credits, payroll waste, repair and service expenses, substitute-equipment expenses, business interruption, loss of clients, loss of goodwill, reputational injury, administrative burden, attorney's fees where recoverable, costs, interest, punitive damages, and other damages according to proof.

190. Candela's conduct was fraudulent, oppressive, malicious, or undertaken with conscious disregard of Plaintiff's rights, supporting punitive damages under NRS 42.005.

## VII. THIRD CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
### Against All Defendants

191. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

192. Candela, in the course of its business, profession, employment, or pecuniary interest, supplied information to Plaintiff.

193. Candela supplied information concerning the machines, replacement components, YAG Heads, repairs, serviceability, reliability, defect status, parts availability, and Candela's ability to restore the machines to operation.

194. Candela represented, expressly or impliedly, that its replacement components, repair process, service network, technician work, and parts supply would restore the machines to reliable commercial operation.

195. Candela represented, expressly or impliedly, that Plaintiff could continue relying on Candela's repair and replacement-part process.

196. Candela failed to exercise reasonable care or competence in obtaining or communicating this information.

197. Candela omitted material information necessary to make its statements and conduct not misleading.

198. Candela supplied false, incomplete, or misleading information to Plaintiff.

199. Plaintiff justifiably relied on Candela's information, omissions, and repair representations.

200. Plaintiff's reliance was reasonable because Candela had superior technical knowledge, superior product knowledge, exclusive repair access, internal defect information, access to technicians, access to service records, access to engineering information, and control over approved replacement parts.

201. As a direct and proximate result of Candela's negligent misrepresentations, Plaintiff suffered damages in an amount exceeding $100,000.

202. Plaintiff's damages include lost revenue, diminished business value, refunds, credits, payroll waste, repair and service expenses, substitute-equipment expenses, business interruption, loss of clients, loss of goodwill, reputational injury, administrative burden, attorney's fees where recoverable, costs, interest, and other damages according to proof.

## VIII. FOURTH CAUSE OF ACTION
## NEGLIGENT REPAIR AND FAILURE TO WARN
### Against All Defendants

203. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

204. Candela undertook to inspect, diagnose, service, repair, maintain, and replace components in Plaintiff's machines.

205. Candela dispatched authorized service personnel to Plaintiff's Nevada business.

206. Candela's technicians inspected the machines, diagnosed failures, replaced components, communicated with Plaintiff, and attempted to restore the machines to operation.

207. By undertaking repair and service work, Candela owed Plaintiff a duty to exercise reasonable care, skill, and diligence.

208. Candela also owed Plaintiff a duty to avoid increasing the risk of harm to Plaintiff's business through negligent repair work, defective replacement parts, incomplete information, or misleading repair communications.

209. Candela also owed Plaintiff a duty to warn of known or reasonably knowable defects in replacement components, including defective replacement YAG Heads, because Candela had superior knowledge and Plaintiff could not reasonably discover the scope, frequency, cause, or expected duration of the defect.

210. Candela breached its duties by supplying or installing defective replacement components.

211. Candela breached its duties by failing to provide non-defective YAG Heads within a commercially reasonable time.

212. Candela breached its duties by repeatedly attempting ineffective repairs.

213. Candela breached its duties by failing to timely diagnose and correct recurring failures.

214. Candela breached its duties by failing to warn Plaintiff of known premature YAG Head failures.

215. Candela breached its duties by failing to disclose the widespread or worldwide nature of the defect.

216. Candela breached its duties by failing to disclose that Candela was redesigning the component.

217. Candela breached its duties by failing to give Plaintiff commercially reasonable guidance necessary to mitigate foreseeable operational harm.

218. Candela's negligent repair and failure to warn were independent of any original purchase contract because they arose from separate post-sale and post-delivery service, repair, diagnostic, replacement-part, warning, and customer-support undertakings.

219. Candela's negligent repair and failure to warn caused Plaintiff to suffer damages in an amount exceeding $100,000.

220. Plaintiff's damages include lost revenue, diminished business value, refunds, credits, payroll waste, repair and service expenses, substitute-equipment expenses, business interruption, loss of clients, loss of goodwill, reputational injury, administrative burden, attorney's fees where recoverable, costs, interest, and other damages according to proof.

## IX. <u>FIFTH CAUSE OF ACTION</u>
## BREACH OF EXPRESS WARRANTIES
### Against All Defendants

221. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

222. Candela made express warranties to Plaintiff through written materials, service agreements, purchase documents, invoices, service documents, repair documents, technician statements, warranty communications, replacement-part communications, product descriptions, marketing materials, and course of performance.

223. Candela expressly warranted that the machines, components, replacement components, YAG Heads, repairs, and services would conform to Candela's descriptions and representations.

224. Candela expressly warranted that the machines and covered components would be free from defects in materials and workmanship.

225. Candela expressly warranted that Candela would repair or replace defects in covered equipment or Candela workmanship.

226. Candela expressly warranted that it would provide service within the applicable service period.

227. Candela expressly warranted that it would use best efforts to respond to service and repair notifications within 24 hours.

228. Candela expressly warranted that it would use best efforts to be onsite within 48 hours of response, excluding weekends and holidays, unless Plaintiff requested a later date.

229. Candela expressly warranted that Candela replacement components and repair work would restore the machines to commercially usable operation.

230. Candela's express warranties became part of the basis of the bargain.

231. Plaintiff relied on Candela's express warranties.

232. Candela breached its express warranties because the machines, components, replacement components, YAG Heads, repairs, and services were defective, nonconforming, unreliable, not commercially reasonable, not as represented, and did not restore the machines to reliable working condition.

233. Candela further breached its express warranties by failing to timely provide non-defective replacement parts and failing to timely cure known defects after receiving actual notice.

234. Plaintiff gave Candela timely notice of the breaches through service requests, repair communications, technician interactions, and formal demand.

235. Any limited repair-or-replacement remedy failed of its essential purpose because Candela repeatedly failed to restore the machines to reliable, commercially usable condition within a reasonable time.

236. Any limitation or exclusion of consequential damages is unenforceable, inapplicable, waived, unconscionable as applied, defeated by failure of essential purpose, or unavailable due to Candela's fraud, concealment, deceptive trade practices, negligent repair, and independent wrongful conduct.

237. As a direct and proximate result of Candela's breaches of express warranties, Plaintiff suffered damages in an amount exceeding $100,000.

238. Plaintiff's damages include lost revenue, diminished business value, refunds, credits, payroll waste, repair and service expenses, substitute-equipment expenses, business interruption, loss of clients, loss of goodwill, reputational injury, administrative burden, attorney's fees where recoverable, costs, interest, and other damages according to proof.

## X. <u>SIXTH CAUSE OF ACTION</u>

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**Pled in the Alternative Against All Defendants**

239. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

240. Candela is a merchant with respect to medical-aesthetic laser systems, laser components, replacement components, YAG Heads, repair parts, and related goods.

241. Unless effectively excluded or modified, applicable law implies a warranty that goods sold by a merchant are merchantable.

242. The machines, replacement components, YAG Heads, and repair parts were required to pass without objection in the trade, be of fair average quality, be fit for the ordinary purposes for which such goods are used, and conform to Candela's promises or affirmations of fact.

243. The machines, replacement components, YAG Heads, and repair parts were not merchantable because they repeatedly failed, rendered the machines inoperable, did not withstand ordinary professional use, could not reliably perform their intended functions, and required repeated service and replacement.

244. Candela breached the implied warranty of merchantability by supplying defective machines, defective replacement components, defective YAG Heads, and defective repair parts.

245. Plaintiff notified Candela of the breaches within a reasonable time after discovering them.

246. To the extent Candela contends any implied-warranty claim based on original machine purchases is time-barred or disclaimed, Plaintiff pleads this claim in the alternative and alleges that the claim

also arises from defective replacement components, repair parts, YAG Heads, post-sale repair undertakings, warranties that extended to future performance, and Candela's ongoing repair and replacement conduct within the limitations period.

247. Any disclaimer or limitation is unenforceable, inapplicable, waived, unconscionable as applied, defeated by failure of essential purpose, or unavailable due to Candela's fraud, concealment, deceptive trade practices, negligent repair, and independent wrongful conduct.

248. As a direct and proximate result of Candela's breach of implied warranty of merchantability, Plaintiff suffered damages in an amount exceeding $100,000.

249. Plaintiff's damages include lost revenue, diminished business value, refunds, credits, payroll waste, repair and service expenses, substitute-equipment expenses, business interruption, loss of clients, loss of goodwill, reputational injury, administrative burden, attorney's fees where recoverable, costs, interest, and other damages according to proof.

## XI. SEVENTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE

### Pled in the Alternative Against All Defendants

250. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

251. At the time of the transactions, warranty undertakings, service undertakings, repair undertakings, replacement-part undertakings, and service interactions at issue, Candela knew or had reason to know that Plaintiff required reliable laser machines and components for professional laser hair-removal and medical-aesthetic services in a commercial spa business.

252. Candela knew or had reason to know that Plaintiff was relying on Candela's skill, judgment, technical expertise, service system, and parts supply to select, maintain, repair, and operate machines and components suitable for that purpose.

253. Plaintiff reasonably relied on Candela's skill and judgment.

254. The machines, replacement components, YAG Heads, and repair parts were not fit for Plaintiff's particular purpose because they repeatedly failed, could not be timely repaired with non-defective parts, and could not reliably support Plaintiff's professional laser-service operations.

255. Candela breached the implied warranty of fitness for particular purpose by supplying defective machines, defective replacement components, defective YAG Heads, defective repair parts, and ineffective repair solutions for Plaintiff's known business purpose.

256. Plaintiff notified Candela of the breaches within a reasonable time after discovering them.

257. To the extent Candela contends any implied-warranty claim based on original machine purchases is time-barred or disclaimed, Plaintiff pleads this claim in the alternative and alleges that the claim also arises from defective replacement components, repair parts, YAG Heads, post-sale repair undertakings, warranties that extended to future performance, and Candela's ongoing repair and replacement conduct within the limitations period.

258. Any disclaimer or limitation is unenforceable, inapplicable, waived, unconscionable as applied, defeated by failure of essential purpose, or unavailable due to Candela's fraud, concealment, deceptive trade practices, negligent repair, and independent wrongful conduct.

259. As a direct and proximate result of Candela's breach of implied warranty of fitness for particular purpose, Plaintiff suffered damages in an amount exceeding $100,000.

260. Plaintiff's damages include lost revenue, diminished business value, refunds, credits, payroll waste, repair and service expenses, substitute-equipment expenses, business interruption, loss of clients, loss of goodwill, reputational injury, administrative burden, attorney's fees where recoverable, costs, interest, and other damages according to proof.

## XII. EIGHTH CAUSE OF ACTION

## BREACH OF CONTRACTUAL SERVICE, REPAIR, AND REPLACEMENT-PART OBLIGATIONS

**Pled in the Alternative Against All Defendants**

261. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

262. Plaintiff and Candela entered into enforceable agreements, including purchase agreements, written service agreements, warranty agreements, repair orders, work orders, parts orders, replacement-part transactions, oral repair undertakings, and course-of-performance agreements.

263. Plaintiff performed all conditions, covenants, and obligations required of it, or such performance was excused.

264. Candela was obligated to provide conforming machines, conforming replacement components, competent repair services, commercially reasonable service response, non-defective replacement parts, and repair or warranty relief consistent with Candela's promises, representations, written agreements, repair undertakings, course of performance, and course of dealing.

265. Candela breached its contractual service, repair, and replacement-part obligations by supplying defective components, supplying defective YAG Heads, performing ineffective repairs, delaying repairs, failing to timely provide non-defective replacement components, failing to timely restore the machines to operation, and failing to provide commercially reasonable cure.

266. Candela further breached its obligations by failing to use best efforts to timely respond, timely appear, timely repair, timely replace defective components, and timely provide necessary parts.

267. Candela further breached its obligations by failing to diligently pursue cure after receiving actual notice of recurring failures.

268. To the extent Candela contends that any contract limited Plaintiff to repair or replacement, that limited remedy failed of its essential purpose because Candela repeatedly failed to repair or replace the defective machines and components within a commercially reasonable time.

269. To the extent Candela contends that any contract excluded consequential damages, that exclusion is unenforceable, inapplicable, waived, unconscionable as applied, defeated by failure of essential purpose, or unavailable due to Candela's fraud, concealment, deceptive trade practices, negligent repair, and independent wrongful conduct.

270. As a direct and proximate result of Candela's breaches, Plaintiff suffered damages in an amount exceeding $100,000.

271. Plaintiff's damages include lost revenue, diminished business value, refunds, credits, payroll waste, repair and service expenses, substitute-equipment expenses, business interruption, loss of clients, loss of goodwill, reputational injury, administrative burden, attorney's fees where recoverable, costs, interest, and other damages according to proof.

## XIII. NINTH CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### Pled in the Alternative Against All Defendants

272. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

273. Every contract between Plaintiff and Candela contained an implied covenant of good faith and fair dealing.

274. Candela was required to act in a manner faithful to the purpose of the parties' agreements and Plaintiff's justified expectations.

275. Plaintiff reasonably expected that Candela would provide machines, components, replacement parts, service, repairs, and warranty relief in good faith.

276. Plaintiff reasonably expected that Candela would not knowingly supply defective replacement parts without adequate disclosure.

277. Plaintiff reasonably expected that Candela would not conceal known component defects.

278. Plaintiff reasonably expected that Candela would not delay or obstruct meaningful cure.

279. Plaintiff reasonably expected that Candela would not require reliance on Candela-authorized service while failing to disclose that Candela replacement components were defective or unavailable.

280. Candela breached the implied covenant of good faith and fair dealing by frustrating Plaintiff's justified expectations, including by failing to timely disclose known component defects, failing to provide non-defective replacement parts, repeatedly attempting ineffective repairs, failing to timely restore the machines to operation, and failing to provide meaningful warranty or repair relief despite actual knowledge of the defective YAG Head issue.

281. Candela's conduct was arbitrary, unfair, commercially unreasonable, and inconsistent with the purpose of the parties' relationships and agreements.

282. As a direct and proximate result of Candela's breach, Plaintiff suffered damages in an amount exceeding $100,000.

283. Plaintiff's damages include lost revenue, diminished business value, refunds, credits, payroll waste, repair and service expenses, substitute-equipment expenses, business interruption, loss of clients, loss of goodwill, reputational injury, administrative burden, attorney's fees where recoverable, costs, interest, and other damages according to proof.

## XIV. <u>TENTH CAUSE OF ACTION</u>
## DECLARATORY RELIEF
### Against All Defendants

284. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

285. An actual controversy exists between Plaintiff and Defendants concerning the parties' rights, duties, obligations, warranties, remedies, limitations, disclaimers, forum provisions, service duties, repair duties, replacement-part obligations, and damages arising from the machines, replacement components, YAG Heads, repair services, service agreements, warranty documents, repair documents, service documents, purchase documents, and related transactions.

286. Plaintiff contends that Defendants are liable for the defects, failures, repair deficiencies, warranty breaches, concealment, misrepresentations, deceptive trade practices, negligent repair, failure to warn, and damages alleged herein.

287. Plaintiff further contends that Defendants' limited repair-or-replacement remedies failed of their essential purpose because Defendants repeatedly failed to restore the machines to reliable, commercially usable condition within a reasonable time.

288. Plaintiff further contends that any purported exclusion or limitation of consequential damages is unenforceable, inapplicable, waived, unconscionable as applied, defeated by failure of essential purpose, or unavailable due to Defendants' concealment, fraud, deceptive trade practices, negligent repair, failure to warn, and independent wrongful conduct.

289. Plaintiff further contends that any forum-selection provision does not apply to all claims, all machines, all Defendants, all post-expiration conduct, all statutory claims, all tort claims, all fraud claims, all deceptive-trade-practices claims, or all defective replacement-part claims alleged herein.

290. Plaintiff further contends that any choice-of-law provision does not displace Nevada statutory claims arising from deceptive conduct directed at and injuring a Nevada business in Nevada.

291. Plaintiff further contends that Defendants are not entitled to rely on any contractual disclaimer, limitation, service condition, or warranty limitation that was not part of the parties' bargain, was not conspicuous, was not adequately disclosed, was contradicted by Defendants' express representations, failed of its essential purpose, was procured or applied through concealment or deceptive conduct, or does not apply to the claims alleged herein.

292. Plaintiff seeks a declaration consistent with the foregoing allegations.

293. Declaratory relief will resolve actual disputes between the parties and clarify the legal consequences of Defendants' warranty limitations, repair limitations, service limitations, forum provisions, choice-of-law provisions, and damages limitations.

## XV. DAMAGES

294. Plaintiff seeks all damages recoverable under Nevada law and any other applicable law, including without limitation:

a. Lost revenue, including approximately $30,000 in gross revenue decline during the relevant outage and downtime period;
b. Diminished business sale value, including approximately $120,000 in reduced sale price tied to revenue decline caused by defective machines, defective components, defective YAG Heads, failed repairs, concealment, and failure to warn;
c. Refunds, credits, accommodations, discounts, and customer appeasement costs;
d. Idle payroll and wasted labor expenses;
e. Repair, service, inspection, diagnostic, and replacement-part expenses;
f. Substitute equipment, rental equipment, replacement equipment, or mitigation expenses;
g. Loss of clients, loss of goodwill, negative reviews, reputational injury, and impaired future earnings;
h. Business interruption damages;
i. Administrative burden and management time diverted to addressing equipment failures and customer fallout;
j. Incidental damages;
k. Consequential damages;
l. Direct damages;
m. Benefit-of-the-bargain damages;
n. Diminution-in-value damages;
o. Equitable relief;
p. Declaratory relief;
q. Attorney's fees where recoverable by contract, statute, rule, or other applicable law;

r. Costs of suit;

s. Prejudgment and post-judgment interest;

t. Punitive and exemplary damages where permitted; and

u. Such other damages as may be proven at trial.

## XVI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff LED Consulting LLC d/b/a Spoiled Laser Hair Removal Spa respectfully requests judgment against Defendants Candela Corporation, Candela Medical, Inc., DOES I through X, and ROE CORPORATIONS I through X, inclusive, as follows:

1. For general, special, compensatory, direct, incidental, consequential, statutory, and actual damages in an amount exceeding $100,000, according to proof at trial;
2. For damages arising from lost revenue, diminished business value, refunds, credits, payroll waste, repair expenses, service expenses, substitute equipment expenses, loss of clients, loss of goodwill, business interruption, reputational injury, administrative burden, and all other losses according to proof;
3. For all damages and remedies available under Nevada's Uniform Commercial Code, including NRS 104.2714, NRS 104.2715, and NRS 104.2719;
4. For all damages, equitable relief, costs, and reasonable attorney's fees available under NRS 41.600 and NRS Chapter 598;
5. For declaratory relief confirming that Defendants' limited repair-or-replacement remedies failed of their essential purpose;
6. For declaratory relief confirming that any purported limitation of consequential damages is unenforceable, inapplicable, waived, unconscionable as applied, defeated by failure of essential purpose, or otherwise unavailable;
7. For declaratory relief confirming that any forum-selection provision or choice-of-law provision does not bar Plaintiff's Nevada statutory, tort, fraud, concealment, negligent repair, failure-to-warn, post-expiration repair, defective replacement-part, or deceptive-trade-practices claims;

8. For punitive and exemplary damages under Nevada law, including NRS 42.005, against Defendants whose fraudulent, oppressive, malicious, or consciously indifferent conduct is proven by clear and convincing evidence;
9. For prejudgment and post-judgment interest at the maximum lawful rate;
10. For costs of suit;
11. For reasonable attorney's fees where recoverable by contract, statute, rule, or other applicable law; and
12. For such other and further relief as the Court deems just and proper.

## XVII. <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 30th day of June, 2026.

LAW OFFICE OF MAX KELNER, ESQ.

<u>/s/ *Max Kelner*</u>
Max Kelner, Esq.
Nevada Bar No. 16557
9173 Weeping Hollow Avenue
Las Vegas, NV 89178
*Attorney for Plaintiff*